My name is Ashley Day and I represent the petitioner appellant in this case, Two Star Eagle. First I'd like to inform the court that as described by her family, Two Star Eagle, born May 10th, 1933, made her journey to the spirit world on September 24th, 2018. A suggestion of death has been filed and a special administrator has been appointed. And I have a copy of that order here, should you want to receive that. Okay, thank you. And we were advised of that prior to the hearing. So this case concerns administration of the estate of Little Pony Eagle, a relatively simple, straightforward, uncomplicated estate, and a liquid estate, of which Two Star is an heir, one of two heirs, a sister of Little Pony Eagle. The issues that we face on appeal are the court's denial of imposition of interest on the property not distributed within two years, the personal property of the estate not distributed within two years as required by Section 2410 of the Probate Act. The standard of care required of an administrator and whether it matters if the administrator is compensated or uncompensated. The standard to determine breach of fiduciary duty and if there's a lesser standard for an uncompensated representative. The requirement that estate attorney fees be for administrative purposes, for estate purposes. Is that actually a requirement or can we just assess every estate fee? In this case, what we're objecting to, what we've asked the court to overturn, is the fact that the trial court assessed all fees not attributed to administration of the trust to the estate without distinguishing fees related to litigation versus fees related to estate administration or performance of statutory duties. Then finally, ultimately equity, what's required of an administrator? What are the duties that an administrator actually owes to its beneficiaries? Does the age of the beneficiary matter? And so the trial court's obligation to consider equity when considering all the matters that we've raised here. So first to start with, the court erred when it determined distribution of $240,000 in cash and in-kind jewelry and securities was not unreasonably withheld by the administrator and denied interest on that property withheld. The court's good cause was its judicial notice, which means it made its determination as a matter of law. Counsel may ask a question on the issue of the good cause filing. Would that be an abuse of discretion standard of review? Generally, in the case law, it's been a manifest way to be evidence standard of review. But in those cases, it's been based on evidentiary records. There have been facts and the trial court has made factual determinations. It didn't happen in this case. In this case, the court made its determination on its own record in the prior guardianship case, which makes this case unique in terms of the standard of review to be applied on the interest issue. Does that answer? Well, in reviewing the record, it appeared that Judge Harrison did have several evidentiary hearings. We had a couple of hearings where we have the reports of proceedings. As far as witness testimony where the judge had to make a credibility determination, the bulk of the hearings were argument, minimal testimony. And even with those hearings, the court's finding of good cause was based on its judicial notice. I argue that de novo review, it should be reversed. Manifest weight, and that's what you see in my brief, I even talk about the entire record and compare case law to show that even if you just look at this record, there is nothing to support the trial court, a finding by any court, that it was reasonable for an administrator to keep $240,000 in cash and in-kind liquid assets for two years, much less almost four years. It's not reasonable that the administrator withheld that until the court ordered the administrator to distribute in October 2016. But didn't Judge Harrison find that there were problems with the guardianship estate and that was good cause? That's what he found. And so the first reason was the problem with the house. Who owned the house? I suggest that the statute, the imposition of interest, is independent of real property. The interest is imposed only on personal property of the estate. So, I mean, even if there were complications or issues surrounding the house, that doesn't affect the issue of interest and there's no facts on the record, or nothing in the record, that suggests that any issue around the house justified her keeping $240,000 that wasn't needed for anything related to the house. The second reference he made to the 2013 final accounting and the guardianship proceeding was to the confusion caused by the beneficiary mix-up. That confusion was resolved in 2013 with the family settlement agreement. So even with confusion caused by a beneficiary mix-up, and even if we want to say that confusion wasn't resolved until the second agreement, the amended family settlement agreement in 2014, both of those things happened within the two years of letters of office being issued. So they were fully resolved. So how does something that's fully resolved make it reasonable for after it's resolved for the administrator to hold, keep back, refuse to distribute $240,000 in cash and in-kind assets? There isn't a reason. And so this is, hopefully there won't be another case like this, but this is the case. You have a simple estate, liquid assets. There was already collected, handed over. All it had to do was be distributed. And it wasn't. And we have an 80-year-old heir who has a limited lifespan, who as she ages, her ability to use and enjoy the money diminishes. So for the administrator to withhold that until, for the administrator to force the heir to hire an attorney, come to court, terminate independent administration, which that wasn't terminated until after two and a half years of independent administration. This entire state should have been handled in independent administration. My client agreed to independent administration because of the assurance that independent administration is supposed to facilitate distribution, make it less burdensome. You don't have to go to court. You don't have to do all the formalities. So she agreed to that. The administrator took an oath of office. She didn't keep her oath of office. And Two Star suffered as a result and had to fight to obtain information about the estate, to get an inventory, to get accountings, to tell the administrator, hey, you can't make the estate pay for trust-related expenses. The estate shouldn't pay for the administrator's litigation expenses. Had the administrator done her job, there would be no litigation. It would have been administered. We wouldn't be here. But she didn't do her job. So the court said those fees are paid by the estate. That's not right. That's not what the statute says. That's why we're asking for that to be reversed. All we're asking is for the court to be held to the standard of Illinois law. Illinois law does not say there's a difference in the standard of care for an uncompensated representative versus a compensated representative. Illinois law does not. Illinois recently passed the Elder Abuse Act to protect elderly individuals from not being able to access money that rightfully belongs to them, money rightfully they should be able to have control over. That's a harm recognized in the elder abuse statute. Yet the trial court says no harm, no foul. This is harmless here and finds no breach of fiduciary duty and says that the representative status as an uncompensated representative. So the representative sought compensation. The trial court said no. The representative sought compensation again. The trial court said no. Then the trial court said because you're uncompensated, you're held to a lesser standard. That's not Illinois case law. There's no case law to support or statutory law to support determinations based on those standards of care. So the estate was simple. It could have been administered at six months, but certainly within two years. No litigation fees should be assessed against the estate. Interest, if the statute is to be followed, has to be imposed because it says shall. And there is no good cause for delaying in the distribution of the property in this case. So that's why we're here. That's why we appealed. That's why we're asking this court to reverse the trial court on the interest issue, to impose interest as required by the statute, to remain for proceedings consistent with that, to reverse the trial court's assessment of all estate fees, of all attorney fees not attributed to the trust or assessed to the estate. We're asking this court to reverse that because the trial court needs to determine which of administrative purposes and then to reverse the court's findings and rulings related to breach of fiduciary duty and allow proceeding in that area. Are there any other questions? Thank you, counsel. May it please the court. We represent the respondent in this case who we've referred to as the administrator in this appeal. And we're asking this court to affirm and uphold the trial court's ruling on, there's two issues. There's a statutory interest issue and then there's the issue of the award of attorney fees. There's a lot of discussion about other attorney fees. I just heard discussion about the elder abuse statute, which I think was raised for the first time in the reply brief. I don't think I heard you say your name. Oh, I'm sorry. I apologize. I'm John McCracken with the law firm Goldberg, Heller, and Antignoli. I was referring to the elder abuse statute raised in the reply brief. That has no bearing on this case. What I intend to do in my argument is to look at the first, the statutory interest penalty and address the standard of review and then the facts showing good cause and then address the issue of the attorney's fees, the standard of review, and the facts of that matter. First, the statutory interest penalty. The statute states that if the estate is not administered within two years, the court can go ahead and charge 10% interest, except for good cause show. And the McMillan case we cite is a fourth district case, clearly addresses the standard of review. And it's a manifest way to the evidence standard. It says when the court is considering a trial court's ruling of good cause, it will be a manifest way to the evidence standard. The court said, all reasonable presumptions are made in favor of the trial court, and the appellant has the burden to affirmatively show the errors alleged, and the judgment will not be reversed unless the findings are clearly and palpably contrary to the manifest way to the evidence. So in that case, in upholding the trial court's finding of good cause, they said the probate court could reasonably find on the record that there were inferences establishing good cause for not distributing the estate earlier. And they said the finding was not made contrary to the manifest way of the evidence. So the question then before this court is, in the facts of this case, are there inferences that can be drawn by the trial court establishing good cause? So let's look at this. In the facts of this case, there's kind of two categories of facts I want to look at. First is the assets and the guardianship that were received by the estate, and then the petitioner's litigation in this case. So when we look at the guardianship assets, prior to the decedent dying, there was a guardianship over him, and those assets were administered by a guardian. The guardian was not the administrator. They were separate people. And when the decedent died, those assets and the guardianship then became assets in the estate. But there were problems. The IRAs had wrong beneficiary designations. The certificates of deposits had been improperly transferred by the guardian. The house, we've heard about the house. The house was listed as an asset of the decedent. It was only later that it was learned that it was actually in a trust. There was the stock of Dow Chemical, which had cheated to the state of Delaware. There were missing shares of Praxair. Praxair is the name of the company. Praxair stock. The guardians accounting to the trial court specifically requested that the court order that the guardian and that the administrator confer with the guardian to, quote, resolve the dilemma. That's the guardian's language, to resolve the dilemma regarding the CDs and the IRAs. In the trial court's review of this and in its order, it referred to a fumbled handoff from the guardian. He said the fumbled handoff from the guardian was not the result of any action of the personal representative, being the administrator. The court said the confused accounting of the estate of the ward, and then he references the probate case for the guardianship. He said the confused accounting contributed greatly to the delay in the present case. That delay was not properly attributed to the personal representative. So let's look at what the administrator did in administering this estate. Some of the things that the court heard were that within six months of being appointed, the administrator had facilitated a family settlement agreement to correct the beneficiary designations in the IRA and the CD. Two months later, as a result of that, that resulted in a distribution to the petitioner. Five months later, at petitioner's request, there was an amendment to the family settlement agreement, resulting in a further immediate distribution to the petitioner. So the court had before evidence of the administrator working with the petitioner to facilitate distributions. The court also had evidence of the administrator's efforts to obtain the Dow Chemical stock, which the evidence showed had eschewed to the state of Delaware four months before the decedent passed away. The court had before evidence of these. There was 30 shares of Praxair stock for which no physical stock certificate existed, and these weren't stocks held in a brokerage account. These were the actual stock certificates which were missing and needed to be found and located, actually through affidavits of missing stock certificates. The court had before the evidence of the administrator's efforts to sell the house, which at the time everyone believed to be in the estate. It was in the guardianship report that it was part of the estate. Don't you go to the recorder's office to figure that out? Is that difficult? It could have been done that way. You're right. It could have been done that way by doing the title work. The title work was not. When you sell something, don't you have to find out who owns it? Well, in this case, that was done at the time of there was a sale, and title work was done at the time of the sale. So there was the reliance upon the administrator as to the court filing from a guardian stating that the ownership of the house was with the deceit, and it was in that person's name. It was not until the sale becomes, it's time for the sale, and the title work shows then that there's actually a trust out there, and the title's held in a trust. I think one of the things the judge in this case mentioned, he says, was everything done exactly properly? I mean, he said no, but does he think it was done with malicious intent? No, he doesn't. But the court recognized the efforts of the administrator to move forward and to clean up the house, to sell the personal property, and to sell the residence. So the court had before it these factors which are outside of the control of the administrator, which affected the timing of administering this estate. The court also properly noted the ongoing litigation as a reason for good cause. The court noted that ongoing litigation has been considered a good cause for delaying the distribution of the estate, and that's something that comes out of the McMillan case we cite. So what happened in this case is within six days of learning that the house was in a trust and not in an estate, the effect being that the petitioner was not going to then receive sale proceeds for that, the petitioner filed to terminate independent administration of the estate, and the petitioner has the right to do that. But what does it mean? Well, when independent administration is terminated, the administrator no longer has the authority to then just go forward and administer the estate and sell the assets and liberties without court order. It requires the court order to do so. Was there some jewelry that was misplaced in this case? There was. Was that quite a substantial amount, and what happened to it? Well, the evidence heard was that it was lost by the administrator. Was that your client? Yes. Yes, it was lost. The court looked at that. And what did that consist of? A whole bunch of things or what? I mean item. You know, rings, some necklaces. That's what I'm recalling from the photo. And there's an argument about valuation then on these too? Well, not on appeal there's not. No, no. The only issues on appeal are the statutory interest and petitioner's attorney's fees. The court handled the jewelry issue by making the administrator pay $13,450. Well, I don't know what the amount is, but in this case was there a bunch of appraisals on this? There were appraisals that the judge reviewed. And what was the range on those appraisals? Oh, gosh. Well, I'd be speaking out of. . . There's quite a difference. There was a difference. And they got the low appraisal then was what the amount was then decided the low appraisal was the correct one? No, I think the judge looked at a few of them and basically averaged two of the appraisals to come up with the dollar amount. I was talking about the delay caused by litigation. In this case, the administrator, after the independent administration had been terminated, the administrator went ahead and filed a motion to sell the assets, to move forward with liquidating this estate. The court granted that motion. But within two days later, the petitioner filed a motion to object to the sale of those assets. And the court then vacated its order. And therefore did not allow the administrator to go ahead and sell the assets. So we have a situation. The administrator is filing a motion to try to sell these assets to liquidate it. The petitioner objects. And the court vacates its prior order, which had allowed the administrator to move forward. And that was done at the petitioner's request. So now we have a situation where, again, the petitioner tried to administer everything, or the assets, and the petitioner filed their objection. Well, see, that's why I asked the question about the lost jewelry. Because was that the part that slowed down that? Why did they decide to reverse this order? I think that it did. They were trying to get resolution. So had not that happened, it probably wouldn't have slowed it down. If the jewelry had not been lost? Yes. No. It didn't slow it down at all, huh? No, I think that the jewelry, well, it didn't slow it down at all. Maybe a little bit. But the lost jewelry was at the end. They had been trying to get the appraisals done, figured out how are they going to distribute these. Is it going to be, you know, are they going to sell the jewelry and distribute the cash? Are they going to, you know, divide the jewelry up? And as they're going through that, towards the end of all that process, the jewelry comes up that I think her testimony was she thinks it actually was put in a bag, which was actually then thrown out by mistake. Was that about like $70,000 in the value? What was the value, like about $70,000? No, I think the judge held it liable for the full value of the jewelry of $13,433 is how the judge evaluated it. So with regard to the issue of the delay, did the court have good cause for delaying the distribution, or good cause for finding not to award the interest? And the court had before it then the issues before it of the assets coming in through the guardianship, as well as the petitioner's own delays in litigating this. The other issue before the court then is the award of attorney's fees. And the petitioner's position is that the court made some erroneous conclusion of law and refused to assess these punitive damages or attorney's fees against the administrator. But that's not the factual situation we actually have. From a factual standpoint, to be clear, the court did order and found the administrator liable for $3,500 of the petitioner's attorney's fees. So if the position, which I believe it is, is that the court erroneously insulated the administrator from being liable for breach of fiduciary duties and therefore refused to hold her liable for attorney's fees, he didn't do that. He held her liable for $3,500 and ordered her to pay the petitioner's attorney's fees. It is their argument, though, that the administrator or the state should have been liable for all of the attorney's fees? That is, and I guess with the standard of review on this, attorney's fees are a portion of punitive damages, and under the estate of Taltik case, reversal of trial versus decision on punitive damages is under an abuse of discretion standard. So what they are saying is the court should have automatically just assessed all of the petitioner's attorney's fees onto the administrator. Well, the court did look at this issue and said, okay, what attorney's fees should the administrator be liable to the petitioner for? Now, to be clear, the court did order the administrator liable for $11,402 of the estate's attorney's fees. So the attorneys for the estate, the judge found of those fees, the administrator was liable for $11,402, and the judge talked about his rationale for that, including the house and other things that were done in this estate. But then in reviewing this, the court said, the court finds that where the equities do lie, the court finds it less than equitable to set all of these expenses at the feet of the personal representative. Therefore, as to attorney's fees related to the real estate and other complexities of the estate, the motion to reconsider is denied. So the court went ahead and looked at the facts of this case and assessed how much of these fees should the administrator be liable for. And he assessed, overall, he assessed over $28,000 in liability on the administrator. So in regard to, I think if there were both of these issues now, in regard to the standard review and the court's findings as to, did it look at the facts, how it was within the discretion of the trial court to go ahead and not, or to find good cause and not assess the 10% interest penalty, and to assess only $3,500 of petitioner's attorney's fees and not the full amount that they're requesting on their attorney's fees. So, in conclusion, we would ask that this court to affirm and uphold the trial court on both of those matters, finding good cause for not imposing the statutory interest and upholding the court's award for some, but not all, of petitioner's attorney's fees. Are there any questions? Thank you. All right, rebuttal. Thank you, Your Honor. So I'll try to address each, certain points raised just a minute ago. First, regarding the jewelry, T-Star asked for in-kind distribution of the jewelry in 2014. At any time, the administrator, prior to 2016, could have distributed the jewelry. We wouldn't have had to have gone through the valuation or all of that. We could have used the administrator's first valuation and she could have assessed that against T-Star's share of the estate and distributed the jewelry to her. That didn't happen because after T-Star said she wanted the jewelry, Eagle Feather said she wanted the jewelry, then there was the question of what's the jewelry worth, and then we actually came up with a system of how to handle the jewelry, and then the jewelry got lost. That could have been distributed within two years. Regarding the house, the house sold in the summer of 2015. It sold for $107,500, and that money was distributed into an account for the benefit of the administrator and her sister. So she was careful to distribute the proceeds from the sale of the house to herself and her sister, and yet even after that, kept $240,000 of cash and in-kind assets until the court ordered her to distribute it in October 2016. When the court ordered distribution, distribution for everything but the Praxair shares took place in 25 days. That same distribution could have taken place at any point after the six-month claims period expired. The Praxair stock that was referenced took 60 days, maybe 90 days. That still could have been accomplished within the two-year period required by statute. The Dow shares did not eschew to the state of Delaware. The Dow shares eschewed to the state of Illinois, but the administrator didn't exercise due care to search Illinois unclaimed property. We searched Illinois unclaimed property, discovered the Dow shares, and the court entered an order authorizing us to collect. So let me be clear. You, on behalf of your beneficiary, did the collection, not the administrator? Correct. Correct. And then what we actually asked for regarding two-stars attorney fees, we firmly believe that interest, this is the case that that interest provision in the Probate Act was designed for. This is exactly the thing that we don't want to happen in simple, uncomplicated estates, elderly heirs, liquid assets. Quick distribution. We requested upon imposition of interest that before it was divided and distributed pursuant to the estate, that an amount equal to two-stars attorney fees be paid to her to offset the cost of her attorney fees. Equitable. Equitable so that there's no windfall to the other heir because of two-stars efforts. She's had to pay to indirectly administer the estate. It could have been done at any point during an independent administration. They had two and a half years to independently administer the estate. It didn't happen. What about this argument that, well, that's because your party was involved in litigation and that would cause the delay? At any point after we filed to terminate independent administration, the administrator could have filed a proposed plan for interim distribution. Nothing stopped the administrator. Nothing stopped the administrator from filing an inventory without having to be ordered to do it. Nothing prevented the administrator from filing an accounting without being ordered to do it. But she didn't. Nothing prevented the administrator from filing a proposed interim plan of distribution, a proposed plan of final distribution. She didn't. Only after court order would she act. And the court only ordered it because two-star brought the issue before the court. That shouldn't be required of heirs. It's not fair. And now for the court to say, okay, two-star, you indirectly administered, now we've got distribution like you wanted, which we started attempting to obtain in 2014 outside of court, and we're not effective. So what we've asked the court to do is to exercise its discretion and determine, does it want to pay two-stars, to offset two-stars attorney fees from an amount of interest? Does it want to assess two-stars attorney fees for the ones that actually result in state administration? How does the court want to handle it? It has options. It just needs to be handled. Thank you. Thank you, counsel. We'll take this matter under advisement and render a decision in due course.